## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

**PACIFIC INDEMNITY COMPANY,**

       **Plaintiff,**

**v.**                                                    **No. Civ. 04-0973 JH/WDS**

**THERM-O-DISC, INC., SQUARE D COMPANY**
**and DOES 1-30, inclusive,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Square D Company's Motion for Summary Judgment (Doc. No. 29, filed September 9, 2005), on Defendant Therm-O-Disc, Inc.'s Motion for Summary Judgment (Doc. No. 31, filed September 15, 2005), and on Defendant Therm-O-Disc, Inc.'s Omnibus Motion in Limine (Doc. No. 47, filed November 15, 2005). The Court, having considered the pleadings submitted by the parties, the applicable law, and otherwise being fully advised, finds that genuine issues of material fact exist concerning whether Defendant Square D Company's heater contained a design defect, requiring the Court to deny in part Defendant Square D Company's Motion for Summary Judgment on Plaintiff's claims based on a theory of defective design. The Court nevertheless concludes that Plaintiff cannot succeed as a matter of law on its products liability claims based on a warning defect. Defendant Square D Company is thus entitled to summary judgment on Plaintiff's product liability claims based on a failure to warn theory. In addition, the Court finds that Defendant Therm-O-Disc, Inc.'s Motion for Summary Judgment should be granted in its entirety because Plaintiff, based on the facts construed in the light most favorable to Plaintiff, cannot demonstrate that Defendant Therm-O-Disc, Inc.'s thermal

control was defective or that Defendant Therm-O-Disc, Inc.'s conduct fell below the standard of

ordinary care. Because the Court finds that Defendant Therm-O-Disc, Inc., is entitled to

summary judgment on all Plaintiff's claims, Defendant Therm-O-Disc Inc.'s Omnibus Motion in

Limine should be denied as moot.

I.   **FACTUAL BACKGROUND**

The following facts are either undisputed or are facts, established by admissible evidence,

that most favor Plaintiff Pacific Indemnity Company ("Plaintiff").

Plaintiff issued an insurance policy to Carolin Hamilton, insuring her residence located at

102 Rim Road, Ruidoso, New Mexico. On or about November 20, 2000, a structural fire

damaged Ms. Hamilton's residence. As a result of the fire damage, Ms. Hamilton made a claim

under her insurance policy, and Plaintiff paid Ms. Hamilton $480,531.00 pursuant to the terms of

the policy.

At the time of the fire, Ms. Hamilton's residence contained an electric heater that had been

installed in a sunroom. The heater was installed in 1983, approximately 17 years before the fire.

Defendant Square D Company ("Square D") manufactured the electric heater. The electric heater

contained a thermal control that Defendant Therm-O-Disc, Inc., ("Therm-O-Disc") manufactured

and supplied.

At the time of the fire, Robby Hall was a Captain with the Ruidoso Fire Department. He

investigated the cause and point of origin of the fire at Ms. Hamilton's residence. Based on his

investigation of the pattern of low fire burns, Captain Hall concluded that the heater was the cause

of the fire because it was located in the area that was consistent with the point of origin of the

fire.

Don Naylor is Plaintiff's retained fire origin and cause investigation expert.  In his deposition, Mr. Naylor stated that he could not say that the electric heater was the cause of the fire without further examination to determine if it were energized.  When asked whether he could testify as to the cause of the fire, Mr. Naylor responded, "No."  Mr. Naylor later clarified, however, that he could testify as to the cause of the fire, which, in his opinion, was caused by the heat produced from the electric heater, but that he could not testify as to the reason for the heat being produced.  Mr. Naylor based his opinion on his examination of the fire scene, in which he observed that the heater was the heat source in the area of fire origin.  Mr. Naylor, however, did not have any opinion concerning whether or not the thermal control was defective.

Gavin Replogle, an electrical engineer, is Plaintiff's electrical expert.  He examined the electric heater by disassembling, photographing, and making evaluations and observations of the heater in order to determine the cause of the fire.  At the time he examined the heater involved in this case, Mr. Replogle was the group leader of electrical testing at the company where he worked, Dekko Technical Center.  Based on his examinations, Mr. Replogle did not believe that the heater was either manufactured defectively or designed defectively.  Nor did Mr. Replogle believe that the Therm-O-Disc control was defective.  In his opinion, the heater broke due to fatigue, the wearing out of the normal mechanical operation through contamination with dirt, dust, or other things; lack of maintenance; or end of life.  Although Mr. Replogle stated that he was not aware of any and did not identify any defects in the heater, he later clarified that he did observe that the contacts on the Therm-O-Disc thermostat were fused.  Mr. Replogle explained that he did not consider that a defect, only an observation of the Therm-O-Disc control.

Robert L. Einhaus, a chemist, is another expert for Plaintiff and works as Vice President

3

of Research and Testing for Dekko Technical Center.  Mr. Einhaus worked with Gavin Replogle in inspecting the electric heater.  After inspecting the heater, Mr. Einhaus concluded that the heater's fan failed to initiate rotation when it was energized.  Mr. Einhaus did not have an opinion on why the fan failed to initiate rotation, but admitted that it was possible that it could have been due to lack of maintenance.  Mr. Einhaus agreed that the heater would need maintenance over the years of its use, and that he did not know what maintenance actually took place on the heater.

Based on his inspection of the heater, Mr. Einhaus determined that the heater caused the fire at Ms. Hamilton's residence.  Mr. Einhaus based his conclusion on the exterior blistering of the heater, a lack of soot or char on the heater, the fused controller contacts, the lack of fusing in many other metallic devices in the heater cavity, the melted fan blade, and the fact that the fan rotor would not rotate, all of which were consistent with the heater being the cause of the fire. Mr. Einhaus believed that the following events led to the fire:  (1) failure of the fan to rotate; (2) cycling of the Therm-O-Disc control over an extended period of time; (3) fusing of the contacts in the Therm-O-Disc control caused by the cycling, which meant that the Therm-O-Disc control could not open the circuit and de-energize and cool the heating device; (4) thermal runaway; and (5) fire.

Although Mr. Einhaus concluded from the evidence that the Therm-O-Disc control failed, he could not say at what number of cycles it failed.  Underwriters Laboratories ("UL")[1] uses a measure of 100,000 cycles that the Therm-O-Disc control must be able to withstand in order for UL to approve the device.  In Mr. Einhaus' opinion, the device should be able to withstand more

---

[1]UL is an organization that does independent testing of products, including electrical products, and determines standards for the safe operation and performance of the products.

than 100,000 cycles or there should be some other redundancy device that has a backup for that in the controller.  Mr. Einhaus opined that the UL standard of 100,000 cycles ("UL 873") was reasonable in the sense of being in the best interest of safety and of manufacturing interests, but that in a particular case, it may not be adequate.  Mr. Einhaus noted, however, that the UL standard is specific to a particular product and not to the application of the product in another device, so a manufacturer may want to examine the application to which its device is being used and address some safety issues that may not have been addressed by the UL standard.

Mr. Einhaus also stated in his deposition that he had no knowledge of any manufacturing defect in the heater, as he had no basis for knowing whether or not the heater was built according to its manufacturing specifications.  Nor did Mr. Einhaus have any basis for believing that the Therm-O-Disc device was not manufactured according to the manufacturer's specifications.

Mr. Einhaus, however, testified that, in his opinion, the heater has a design defect in that it relied exclusively on the Therm-O-Disc controller to act as a safety interlock device without a backup, a non-refreshable backup such as a thermal cutoff, or a fusible link.  Mr. Einhaus considered it a design defect because, had it been there, the overheating would have been obviated.  Mr. Einhaus proposed an alternative design that added a non-resettable fusible link that, at a temperature approaching thermal runaway, would have irreversibly opened the circuit and made the device unworkable and not resettable.  Mr. Einhaus nevertheless agreed that the heater met the UL standards that applied to it, including its reliance upon the Therm-O-Disc protection device.  Mr. Einhaus noted, however, that he knew that some heater manufacturers have employed designs with additional backup thermal cutoffs, even though UL would not necessarily require them.

Mr. Einhaus, however, did not think that the Therm-O-Disc control itself was defectively designed for its intended application.  Mr. Einhaus also testified that he did not know of any standard or governmental regulation that the Therm-O-Disc control did not satisfy.  Although Mr. Einhaus initially stated that Therm-O-Disc had an obligation to ensure that its device was not being subjected to stresses beyond those contemplated by the UL testing when the device was being used in another product, he later clarified that he did not believe that it was Therm-O-Disc's responsibility to include his proposed backup design.  Mr. Einhaus testified that it would be the heater manufacturer's responsibility to implement the alternative design with an extra backup to the Therm-O-Disc thermal control.

Raymond Diersing, Square D's senior staff engineer, testified in his deposition that the useful life of the Square D heater is projected at 10 years under normal operation and with maintenance according to the instructions.  He also explained that the only information on maintenance or service of the heater that Square D provided to the consumer was contained in a manual.  This manual said, under heater service, to lubricate the blower wheel bearing, but the term "blower wheel bearing" was not listed in the parts list or depicted in the drawing of the heater.  Mr. Diersing testified that the purpose of the blower wheel bearing is to permit the blower to turn and blow warm air out into the room.  He further admitted that the failure to lubricate the blower wheel bearing could eventually result in the blower wheel not turning, which could end up stressing the heating element, which could result in a fire if the circuit breaker did not work.  According to Mr. Diersing, the manual did not tell the user any of these potential consequences of not following the heater service item of lubricating the blower wheel bearing.  Furthermore, Mr. Diersing admitted that the blower wheel could stop turning if its motor failed and that the manual

did not say anything specifically about maintaining or servicing the motor.

Finally, Mr. Diersing testified about Square D's 1996 recall of approximately 80,000 electric heaters due to the deterioration over time of a rubber grommet, which holds the heater's fan in place, causing the fan to stop blowing.  If the fan stops blowing, it can cause the heater coils to overheat, potentially causing burning or scorching of the wall or nearby house furnishings. Mr. Diersing stated that the rubber grommet would have been a part of Ms. Hamilton's heater. He further testified that a lack of maintenance could cause the grommet to deteriorate and that the manual did not say anything about maintaining the grommet.  Mr. Diersing said that Square D became aware that many consumers were not servicing their heaters but that Square D did not send notification to consumers or wholesalers to inform them of the need to service the heaters. Only about 4,500 consumers exchanged their heaters in response to the recall.

Gordon Wells testified in his deposition as the corporate representative of Therm-O-Disc and as an expert regarding the thermal control used in the Square D heater at Ms. Hamilton's residence.  Mr. Wells identified the Square D heater in Ms. Hamilton's residence as containing a type 60T control, which signifies a family of controls, referred to as a three-quarter inch thermostat.  Based on the physical evidence that remained of the heater from the fire, Mr. Wells could not with certainty identify the specific style of the type 60T control used, so he was only able to describe some, not all, of its operating specifications.  He did testify, however, that the 60T control is expected to operate for 100,000 cycles under maximum rated current and at the end of 100,000 cycles still be functional and operate within an acceptable range of temperatures. Mr. Wells acknowledged that, if a Therm-O-Disc control reaches end of life, it could end up permanently closed, such that it would no longer be able to turn off a heater.  Mr. Wells

additionally stated that Therm-O-Disc does not give any recommendations for the maintenance or service of its controls to the end consumer because it does not expect its control to be serviced.

## II.     PROCEDURAL HISTORY

Plaintiff brought a subrogation action in state court, alleging that the electric heater was defective and caused the fire at Ms. Hamilton's residence.  In Plaintiff's Second Amended Complaint, Plaintiff asserted causes of action for strict products liability, negligence, and breach of the implied warranty of merchantability.  On August 27, 2004, Square D removed the state action to this Court.

On September 9, 2005, Square D filed a Motion for Summary Judgment (Doc. No. 29), requesting dismissal of all Plaintiff's claims against it.  Similarly, on September 15, 2005, Therm-O-Disc filed a Motion for Summary Judgment (Doc. No. 31), as well as a Memorandum in Support of Motion for Summary Judgment (Doc. No. 32), which sought dismissal of all Plaintiff's claims against it.  Therm-O-Disc also filed an Omnibus Motion in Limine (Doc. No. 47) on November 15, 2005.

## III.    STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).   "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  *Id.* (internal quotations omitted).  Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.  The Court will consider Defendants' motions in light of these standards.

## IV.   DISCUSSION

In this diversity action, New Mexico substantive law governs.  *See Martin v. Unit Rig and Equipment Co., Inc.*, 715 F.2d 1434, 1438 (10th Cir. 1983).  New Mexico has adopted the Restatement (Second) of Torts § 402A (1965) as the standard for products liability cases.  *Skyhook v. Jasper*, 90 N.M. 143, 146-47, 560 P.2d 934, 937-38 (1977), *overruled on other grounds by Klopp v. Wackenhut Corp.*, 113 N.M. 153, 157, 824 P.2d 293, 297 (1992).  For a strict products liability claim, the plaintiff must prove the following elements:  (1) the product was defective; (2) the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user or consumer; (3) because of the defect, the

product was unreasonably dangerous to the user or consumer; (4) the consumer was injured or

damaged; and (5) the defective product was the proximate cause of the injury or damage. *Garner*

*v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir. 1984) (citing *Tenney v. Seven-Up Co.*, 92

N.M. 158, 584 P.2d 205 (Ct. App. 1978)).

New Mexico recognizes three types of defects:  (1) manufacturing defects, (2) design

defects, and (3) warning defects.  *Fernandez v. Ford Motor Co.*, 118 N.M. 100, 109, 879 P.2d

101, 110 (Ct. App. 1994).  New Mexico defines a defective product as one that creates "an

unreasonable risk of injury resulting from a condition of the product or from a manner of its use."

UJI 13-1406 NMRA 2006.  "An unreasonable risk of injury is a risk which a reasonably prudent

person having full knowledge of the risk would find unacceptable."  UJI 13-1407 NMRA 2006.

As to the design of a product, the design "need not necessarily adopt features which represent the

ultimate in safety;" however, "the ability to eliminate the risk without seriously impairing the

usefulness of the product or making it unduly expensive" is a factor in determining the

reasonableness of the risk of injury.  *Id.*  Determining whether a product presents an unreasonable

risk of injury is ordinarily a question for the jury.  *Smith ex rel. Smith v. Bryco Arms*, 2001-

NMCA-090, ¶ 14, 131 N.M. 87, 93, 33 P.3d 638, 644; *Fernandez*, 118 N.M. at 112, 879 P.2d at

113.

Under a negligence theory, the plaintiff must prove that (1) the defendant owes a duty to

the plaintiff; (2) the defendant breached that duty; and (3) the breach caused plaintiff's injuries.

*Fernandez*, 118 N.M. at 108, 879 P.2d at 109.  Under New Mexico negligence law,

"manufacturers and distributors of products have a duty to use ordinary care in producing

products so as to avoid a foreseeable risk of injury caused by a condition of the product or

manner in which it is used." *Bryco Arms*, 2001-NMCA-090, ¶ 19, 131 N.M. at 94, 33 P.3d at

645. This duty exists as a matter of law. *Id.* at ¶ 20, 131 N.M. at 94, 33 P.3d at 645. A

manufacturer must use ordinary care in the designing, making, inspecting, and packaging of the

product. UJI 13-1410 NMRA 2006.[2] Ordinary care is that care which a reasonably prudent

supplier would use in the conduct of its business. UJI 13-1404 NMRA 2006. As the foreseeable

danger of the product increases, the amount of care required also increases. *Id.* A manufacturer's

duty of care is limited to reasonably foreseeable risks of injury. *Bryco Arms*, 2001-NMCA-090,

at ¶ 20, 131 N.M. at 94, 33 P.3d at 645. "Once it has been determined that a duty exists, the

---

[2]Plaintiff argues that the jury instructions applicable to general negligence claims found in UJI 13-1601, 13-1603, and 13-1604 are the instructions and law that apply in this case. Plaintiff suggests that the law contained in the products liability instructions do not apply to her negligence claim. The Court disagrees, as the general negligence instructions were not intended "to preclude the use of other instructions as may be necessary in any particular case." UJI Chapter 16 NMRA 2006, Introduction.

In this case, Plaintiff's Second Cause of Action for Negligence focuses on Defendants' duty to avoid the risk of injury posed by Defendants' *products*. *See* Second Am. Compl. ¶ 21 ("Defendants . . . owed a duty to exercise ordinary care to avoid the risk posed by their *products*. . . ."), ¶ 22 ("Defendants . . . had a duty to inspect their respective *products* before selling them."), ¶ 24 ("Defendants . . . owed Plaintiff's insured a duty to use ordinary care to provide directions for use of their *products* to avoid a risk of injury caused by a foreseeable manner of their use.") (emphasis added). Plaintiff has sued Therm-O-Disc as the manufacturer or supplier of the thermal control and Square D as the manufacturer or supplier of the heater. *See* Second Am. Compl. ¶¶ 2-3. Plaintiff has thus clearly alleged a products liability cause of action based on a negligence theory of liability.

The Uniform Jury Instructions contain a separate chapter for products liability cases, which includes instructions applicable to negligence products liability cases in addition to strict products liability cases. *See, e.g.*, UJI 13-1402 NMRA 2006, Committee Comment ("This instruction must be given in any products liability case in which the court submits negligence as a theory of liability."). The negligence products liability instructions delineate the issues of duty, breach, and causation as they apply specifically to suppliers and manufacturers of products. The Court finds that the law applicable to Plaintiff's negligence claim in this case derives not only from general negligence principles but also from the Uniform Jury Instructions pertaining specifically to negligence in products liability cases. *See* UJI 13-1402 NMRA 2006, *et seq.*; *Bryco Arms*, 2001-NMCA-090, ¶ 19, 131 N.M. at 94, 33 P.3d at 645 (applying products liability instructions to explain negligence theory).

11

limits on that duty under a specific set of facts are ordinarily questions for the jury." *Id.* at ¶ 28, 131 N.M. at 96, 33 P.3d 647.

In both negligence and strict liability products cases, the general tort law definition of proximate cause applies. UJI 13-1424 NMRA 2006, Committee Comment. "The cause of an injury is that which, in a natural and continuous sequence . . ., contributes to bringing about the injury and without which the injury would not have occurred." UJI 13-1424 NMRA 2006.

As for breach of implied warranty of merchantability claims, a supplier breaches this warranty if the product is defective and is not fit for the ordinary purposes for which such product is used. UJI 13-1430[3] NMRA 2006. This claim thus requires proof of a defect. *Perfetti v. McGhan Medical*, 99 N.M. 645, 653, 662 P.2d 646, 654 (Ct. App. 1983). Although this claim may be similar to a strict products liability claim where the plaintiff relies on the same defect to support both theories, both causes of action should generally be available to the plaintiff. *See id.*

A.     **Square D's Motion for Summary Judgment**

Square D argues that it is entitled to summary judgment on all claims advanced by Plaintiff because Plaintiff cannot show a defect or proximate cause. Square D contends that "all three of Plaintiff's experts have testified that they cannot identify any defect and that the heater met all manufacturing and UL standards." Square D's Mot. for Summ. J. (Doc. No. 29) at 6. Square D asserts that the claims of strict products liability, negligence, and breach of an implied warranty of merchantability all require Plaintiff to prove the existence of a defect, and Plaintiff's failure to demonstrate the existence of a defect compels the entry of summary judgment against Plaintiff.

Plaintiff contends that it has shown that the heater created a foreseeable risk of injury and was defective based on "the manner in which its heater was used -- i.e., it overheated because its

fan failed and its internal component, the Therm-O-Disc thermal control, fused in its closed

position, allowing a continuous stream of electricity to increase the heat output of the heater's

heating elements." Pl.'s Opp. to Mot. for Summ. J. Submitted by Def. Square D Co. and Mem. in

Supp. Thereof (Doc. No. 37) ("Pl.'s Opp. to Square D") at 17.  Plaintiff also argues that

compliance with industry standards is not conclusive as to ordinary care or the acceptability of the

risk.  In addition, Plaintiff asserts that there is evidence that Square D did not provide adequate

warnings or directions for use of its heater, precluding the entry of summary judgment.  As to

Plaintiff's negligence claim, Plaintiff contends that its negligence claim does not require proof of a

defect, and thus, Square D's motion for summary judgment based on this argument must be

denied.

### 1.    Strict Products Liability

The failure to incorporate into a product an optional safety feature or device may

constitute a defective condition of the product.  *Skyhook*, 90 N.M. at 147, 560 P.2d at 938.  New

Mexico courts have long held manufacturers liable for failing to include safety devices in their

products.  *Bryco Arms*, 2001-NMCA-090, ¶ 9, 131 N.M. at 92, 33 P.3d at 643. The test of

whether or not such a failure constitutes a defect is whether the product, absent the safety device,

is unreasonably dangerous to the user or consumer or to his property.  *Skyhook*, 90 N.M. at 147,

560 P.2d at 938.  The mere fact that an accident occurred, however, is, alone, insufficient to

demonstrate that the product was unreasonably dangerous.  *Id.*

Despite Square D's argument that there is no evidence of a defect, the Court finds that

Plaintiff has provided evidence of a design defect.  Robert L. Einhaus, one of Plaintiff's experts,

testified that, based on his inspection of the heater, the heater caused the fire at Ms. Hamilton's

residence.  Mr. Einhaus opined that the following sequence of events led to the fire:  (1) the failure of the fan in the heater to rotate; (2) cycling of the Therm-O-Disc control over an extended period of time; (3) fusing of the contacts in the Therm-O-Disc control caused by the cycling, which resulted in the Therm-O-Disc control not being able to open the circuit and de-energize and cool the heating device; (4) thermal runaway; and (5) fire.  Although Mr. Einhaus stated in his deposition that he had no knowledge of any manufacturing defect in the heater, Mr. Einhaus testified that, in his opinion, the heater had a design defect in that it relied exclusively on the Therm-O-Disc controller to act as a safety interlock device without a backup, a non-refreshable backup such as a thermal cutoff, or a fusible link.  Mr. Einhaus considered it a design defect because, had it been there, the overheating would have been obviated.  Mr. Einhaus proposed an alternative design that would have added a non-resettable fusible link that, at a temperature approaching thermal runaway, would have irreversibly opened the circuit and made the device unworkable and not resettable.  Mr. Einhaus stated that some manufacturers have included these types of cutoffs for safety purposes even though UL would not require them.

Mr. Einhaus' opinion that Square D failed to incorporate the optional safety feature of an additional non-resettable fusible link is evidence of a defective condition of the heater.  Mr. Einhaus' opinion that the optional safety feature would have prevented thermal runaway and have avoided the overheating situation that he believed led to the fire is also evidence that the heater, absent the additional safety device, was unreasonably dangerous to the insured and her property. The Court finds that this evidence, viewed in the light most favorable to Plaintiff, is sufficient to raise a question of material fact for the jury concerning whether the heater was defectively designed.  *Cf. Martin*, 715 F.2d at 1439-40 (plaintiff made prima facie case that hoisting pins,

14

intended to secure bed of truck in upright position, were defectively designed where expert testified that truck bed fell because of lack of strength of pins).

The fact that Square D may have complied with all industry standards and regulations is certainly evidence of the acceptability of the risk of injury to a reasonably prudent person; however, it is not conclusive as to the acceptability of the risk for a product liability claim. *See Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 381, 902 P.2d 54, 63 (1995) (evidence of industry standards and of compliance with applicable regulations are relevant to whether product poses an unreasonable risk of injury, but such evidence is not conclusive as to whether product was defective); *Fabian v. E.W. Bliss Co.*, 582 F.2d 1257, 1261 (10th Cir. 1978) (same). Evidence of compliance with industry standards therefore does not compel summary judgment; rather, it is evidence for the jury to consider when determining the merits of Plaintiff's strict products liability claim.

The Court also finds that Mr. Einhaus' testimony is sufficient to create an issue of fact for the jury as to whether the design defect caused the fire damage.  Mr. Einhaus testified that, had the optional backup thermal cutoff or non-resettable fusible link been a part of the heater, the overheating would have been obviated by irreversibly opening the circuit, which inferentially, would have prevented the fire.  Mr. Einhaus' opinion is evidence that the design defect contributed to bringing about the fire, and without which, the fire, and subsequent injury, would not have occurred.

In sum, Plaintiff has established sufficient evidence of a design defect of the heater and that the design defect caused Plaintiff's injury to survive summary judgment.  The Court will thus deny Square D's Motion for Summary Judgment as to Plaintiff's strict products liability claim

based on a design defect.

Plaintiff additionally argues, however, that the heater was defective because Square D put it on the market without providing adequate warnings or directions for use of its heater.  Indeed, Plaintiff has shown some evidence that Square D's manual did not contain adequate warnings or directions for use to maintain the blower wheel bearing, the blower wheel motor, and the rubber grommet.  Plaintiff nevertheless has not provided sufficient evidence that the lack of warnings caused the fire at Ms. Hamilton's residence -- a necessary element in a products liability claim. *See* UJI 13-1424 &13-1425 NMRA 2006.

Mr. Einhaus testified that the failure of the fan to rotate caused cycling, fusing of the Therm-O-Disc control, thermal runaway, and ultimately, the fire.  Mr. Einhaus also stated that lack of maintenance could cause the fan to stop rotating.  Mr. Einhaus, however, did not have an opinion as to which event, or combination of events, caused the fan to fail to initiate rotation.  Plaintiff's other experts also did not offer an opinion as to what caused the fan to stop rotating.  Raymond Diersing indicated that the failure to properly maintain the blower wheel bearing, the blower wheel motor, or the rubber grommet could result in a fire, but he, too, did not offer an opinion on what caused the fan to stop rotating in this case.  Thus, although Plaintiff established that deterioration of the rubber grommet and lack of maintenance of the blower wheel bearing or motor could cause the fan to stop rotating, none of the experts could testify as to which of the potential causes, or combination thereof, actually caused the fan in Ms. Hamilton's heater to stop rotating.  Because Plaintiff cannot show that lack of maintenance of a particular part or parts in the heater caused the fire, Plaintiff also cannot demonstrate that the failure to provide warnings to maintain that particular part caused the fire.  Accordingly, although the Court has allowed

Plaintiff's strict products liability claim to proceed, Plaintiff's claim is limited to a defect based on an allegedly flawed design.  Square D is thus entitled to summary judgment on Plaintiff's products liability claim based on the theory of failure to provide adequate warnings or directions for use.

### 2.      Negligence

Square D contends that a negligence cause of action requires proof of a product defect. Square D's argument that it is entitled to summary judgment on Plaintiff's negligence claim is essentially the same as its argument for summary judgment on Plaintiff's strict products liability claim:  Plaintiff has failed to provide evidence of a product defect and proximate cause.  As discussed above, the Court has found evidence of a design defect in the heater and that the design defect caused the fire.  The Court must therefore deny Square D's Motion for Summary Judgment as to Plaintiff's negligence claim based on the arguments presented.

### 3.      Breach of Implied Warranty of Merchantability

For the same reasons, the Court must deny Square D's Motion for Summary Judgment on Plaintiff's breach of implied warranty of merchantability claim.  Plaintiff has provided sufficient expert opinion testimony that the heater had a design defect that caused the fire at Ms. Hamilton's residence to survive summary judgment on this claim.

### B.      Therm-O-Disc's Motion for Summary Judgment

Therm-O-Disc contends that it is entitled to summary judgment on all Plaintiff's claims because Plaintiff has failed to prove that the Therm-O-Disc control was defective or that the thermal control caused the fire at Ms. Hamilton's residence.  Plaintiff argues that it has demonstrated both a defect and negligence on the part of Therm-O-Disc based on the fact that the Therm-O-Disc control's contacts fused, leading to thermal runaway and the fire, and that Therm-

O-Disc did not provide any warnings or directions for use for its product.

### 1.  Strict Products Liability

Products liability applies to the supplier of a component part that causes injury if, when incorporated into the finished product, the component part is substantially unchanged or is in a condition in which it could have been reasonably expected to have been used.  UJI 13-1423 NMRA 2006.  A component part manufacturer is strictly liable if the component part was unreasonably dangerous at the time it left the manufacturer's control.  *See Parker v. E.I. Du Pont de Nemours & Co., Inc.*, 121 N.M. 120, 124-25, 909 P.2d 1, 5-6 (Ct. App. 1995).  A supplier of a component part that is not inherently defective or dangerous at the time it leaves the manufacturer's control and that is incorporated into another product, "does not owe a duty to an ultimate consumer to issue a warning concerning the suitability or safety of the finished product; in such situation any duty to warn rests upon the manufacturer of the device or finished product." *Id.* at 126, 909 P.2d at 7.  Nor does the component part manufacturer have a duty to foresee all the dangers that may result from the subsequent manufacture of a product that incorporates the component part into a finished product.  *See id.*

Although Plaintiff has provided expert opinion testimony that the Square D heater was defectively designed and was the cause of the fire, Plaintiff has not similarly demonstrated that the Therm-O-Disc thermal control component in the heater was defective.  Gavin Replogle stated in his deposition that he did not think the Therm-O-Disc control was defective.  Plaintiff points to the fact that Mr. Replogle later clarified that he observed that the contacts on the Therm-O-Disc thermostat were fused as evidence of a defect.  The problem with Plaintiff's argument, however, is the fact that Mr. Replogle explained that he did not consider the fused contacts a defect, only an

18

"observation" of the Therm-O-Disc control.  The mere fact that a failure or accident occurred is insufficient to support a strict products liability claim.  There must be evidence of a defect.  *See Skyhook*, 90 N.M. at 147, 560 P.2d at 938 (fact that accident occurred is not in itself sufficient to support finding that product was unreasonably dangerous); *Springer Corp. v. Dallas & Mavis Forwarding Co., Inc.*, 90 N.M. 58, 60, 559 P.2d 846, 848 (Ct. App. 1976) (evidence of tire blowout alone was not sufficient evidence of tire defect).

Mr. Einhaus' testimony as to the Therm-O-Disc control is similarly not evidence of a defect.  It is true that Mr. Einhaus testified that the Therm-O-Disc control failed in Ms. Hamilton's heater.  Mr. Einhaus also explained that one of the events that led to the fire was the fact that the contacts on the Therm-O-Disc fused together.  Nevertheless, despite this testimony, Mr. Einhaus specifically stated that he did not believe the Therm-O-Disc device had either a manufacturing defect or a design defect.  Mr. Einhaus further explained that the design defect in failing to include a backup thermal cutoff is a design defect of the heater, not the Therm-O-Disc control.  Mr. Einhaus stated that the alternative design was the responsibility of the heater manufacturer, *i.e.*, Square D, not Therm-O-Disc's responsibility.  Plaintiff's own expert, thus, cannot even testify that the fusing of the Therm-O-Disc control can be characterized as a defect of the device.[3]  Consequently, Plaintiff has not provided sufficient evidence to show that the Therm-

---

[3]Although Mr. Einhaus testified that the Therm-O-Disc device should be able to withstand more than 100,000 cycles, Mr. Einhaus could not state how many cycles occurred before the Therm-O-Disc control's contacts fused.  The control may have withstood far more than 100,000 cycles before the contacts fused.  Based on this lack of evidence, Plaintiff cannot prove that a manufacturing defect in the Therm-O-Disc control caused its contacts to fuse.  Moreover, Mr. Einhaus did not testify that the Therm-O-Disc control should have been designed differently to withstand a higher number of cycles.  Rather, Mr. Einhaus specifically stated that he did not believe that the Therm-O-Disc control was defectively designed.

O-Disc control was inherently defective or unsafe at the time it left Therm-O-Disc's control.[4]

Plaintiff also claims that Therm-O-Disc failed to provide warnings or directions for use of its product to the ultimate users of the heater. Plaintiff, however, has not shown that the Therm-O-Disc control was inherently defective or dangerous at the time it left Therm-O-Disc's control, and thus, Therm-O-Disc does not have a duty to the ultimate consumer to issue a warning concerning the safety of the finished product – any duty to warn would rest upon Square D. *See Parker*, 121 N.M. at 126, 909 P.2d at 7.

Moreover, even if Therm-O-Disc did have a duty to warn Plaintiff concerning safety issues or to give directions for servicing, Plaintiff cannot show that the failure of Therm-O-Disc to provide warnings or directions caused the fire. Plaintiff must prove that any such warnings or directions would have been noticed and acted upon to guard against the danger and that the failure to give the warnings or directions is a cause of injury. *See* UJI 13-1424 & 13-1425, NMRA 2006. Plaintiff has not demonstrated what kind of warning as to the Therm-O-Disc control would have avoided the fire. Nor has Plaintiff shown that providing directions to service the Therm-O-Disc control would have prevented the fire. Plaintiff has not provided any evidence that servicing the Therm-O-Disc control would have avoided the contacts fusing together. Consequently, Therm-O-Disc is also entitled to summary judgment on Plaintiff's products liability claim based on a failure to warn theory.

Proof of a defect is required to succeed on a strict products liability claim. *Garner*, 732 F.2d at 114; UJI 13-1406 NMRA 2006. Because Plaintiff has not demonstrated proof of a

---

[4]The Court's conclusion that there is insufficient evidence of a defect in the Therm-O-Disc control similarly precludes any argument by Plaintiff that the Square D heater is defective based solely on the fusing of the Therm-O-Disc control.

manufacturing, design, or warning defect of the Therm-O-Disc control, Therm-O-Disc is entitled to summary judgment on Plaintiff's strict products liability cause of action.

### 2.     Negligence

In order to prove a general negligence claim, a plaintiff must show (1) the existence of a duty owed to the plaintiff, (2) a breach of such duty, (3) a causal connection between the breach of duty and the plaintiff's injury, and (4) damages resulting from the breach. *See Parker*, 121 N.M. at 130, 909 P.2d at 11. Therefore, under New Mexico negligence law, Plaintiff must show that Therm-O-Disc owed it a duty that it breached.

Plaintiff claims that "Therm-O-Disc had a duty to ensure that the use of its thermal controller in the Square D heater would not subject the controller to stresses beyond those tested by Underwriters Laboratories, causing its failure." Pl.'s Opp. to Mot. for Summ. J. Submitted by Def. Therm-O-Disc, Inc. and Mem. in Supp. Thereof (Doc. No. 38) ("Pl.'s Opp. to Therm-O-Disc") at 13. Plaintiff's argument relies on the testimony of Mr. Einhaus. Mr. Einhaus' testimony, however, does not support Plaintiff's position. Although Mr. Einhaus initially stated that a manufacturer may want to examine the application in which its component device is being used to ensure that it is not being subjected to stresses beyond those contemplated by the UL testing when the device was being used in another product, he later indicated that he did not believe that it was Therm-O-Disc's responsibility. Instead, he placed the responsibility on the manufacturer of the final product. The Court agrees with Mr. Einhaus' assessment that Therm-O-Disc did not owe Plaintiff a duty to ensure that its thermal control was not subject to stresses beyond UL standards when incorporated into the heater -- any such duty would have been owed by the manufacturer of the final product. *See Parker*, 121 N.M. at 128, 909 P.2d at 9

(manufacturer of non-defective product has no duty to test suitability of another's finished product which is assembled from several different components).

In any event, even if Therm-O-Disc had such a duty, Plaintiff cannot show that Therm-O-Disc breached the duty in this case.   UL confirmed that the Therm-O-Disc control could withstand 100,000 cycles.  Plaintiff, however, cannot prove how many cycles occurred before the Therm-O-Disc control failed in this case, and thus, Plaintiff cannot demonstrate how much stress/cycling the Therm-O-Disc control was subject to prior to its fusing.  Plaintiff therefore cannot prove that the controller was subject to stresses beyond those tested by UL.

Moreover, Plaintiff's actual argument concerning breach does not match the duty Plaintiff proposed.  Plaintiff asserted that Therm-O-Disc breached its duty because the following occurred: "The contacts of the Therm-O-Disc thermal controller in the Square D electric heater in Ms. Hamilton's house fused, allowing thermal runaway which caused the fire."  Pl.'s Opp. to Therm-O-Disc at 13.  Plaintiff's breach of duty argument says nothing about the Therm-O-Disc control being subject to stresses exceeding the UL standard.  Rather, Plaintiff asserts that the breach is the fusing of the contacts.  Plaintiff really appears to be arguing that Therm-O-Disc owed Plaintiff a duty to create its product in a way that its contacts would never fuse.  Such a duty is patently unreasonable, as a manufacturer cannot be expected to create a product that will last forever.  *See Scott v. White Trucks*, 699 F.2d 714, 717 (5th Cir. 1983).  Rather, the duty that Therm-O-Disc owed to Plaintiff is the duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of its product or manner in which its product is used.  *See* UJI 13-1402 NMRA 2006.  A supplier only has a duty to use ordinary care – that is, what a reasonably prudent supplier would use in the conduct of its business.  *See* UJI 13-1404 NMRA 2006.

Plaintiff has not provided sufficient evidence to create a genuine issue of material fact that Therm-O-Disc did not meet this standard of ordinary care. The mere fact that the contacts on the Therm-O-Disc control fused is not enough to demonstrate that Therm-O-Disc violated its duty to use ordinary care. Therm-O-Disc is therefore entitled to summary judgment on Plaintiff's negligence cause of action.

### 3.      Breach of Implied Warranty of Merchantability

A breach of implied warranty of merchantability claim requires proof of a defect. *Perfetti*, 99 N.M. at 653, 662 P.2d at 654. As discussed above, Plaintiff cannot demonstrate that the Therm-O-Disc control used in Ms. Hamilton's heater was defective. Accordingly, Therm-O-Disc is entitled to summary judgment on Plaintiff's breach of implied warranty of merchantability claim.


**IT IS THEREFORE ORDERED** that:

1.      Defendant Square D Company's Motion for Summary Judgment (Doc. No. 29) is **GRANTED** as to Plaintiff's products liability claims based on a theory of failure to warn, and is **DENIED** in all other respects;

2.      Defendant Therm-O-Disc, Inc.'s Motion for Summary Judgment (Doc No. 31) is **GRANTED** in its entirety;

3.      All Plaintiff's claims against Defendant Therm-O-Disc, Inc., are **DISMISSED WITH PREJUDICE**; and

    4.      Defendant Therm-O-Disc, Inc.'s Omnibus Motion in Limine (Doc. No. 47) is

**DENIED** as moot based on the dismissal of all Plaintiff's claims against Defendant Therm-O-

Disc, Inc.

_____
UNITED STATES DISTRICT JUDGE